26 So.2d 413

### WESLEY v. STATE.
### 4 Div. 918.

Court of Appeals of Alabama.
May 14, 1946.

Rehearing Denied June 4, 1946.

Reversed and remanded.

See, also, Ex parte Wesley, 31 Ala.App. 323, 16 So.2d 427.

O. S. Lewis and C. R. Lewis, both of Dothan, for appellant.

Wm. N. McQueen, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment upon which appellant (defendant) was tried, charged him with the offense of manslaughter in the first degree in that he said "Joe Wesley unlawfully and intentionally, but without malice, killed Willie Godwin by stabbing him with a screw driver, against the peace and dignity of the State of Alabama."

The trial resulted in the conviction of defendant for the offense of manslaughter in the second degree and the punishment fixed by the jury was hard labor for the county for twelve months. He was accordingly sentenced by the court.

It appears, without substantial dispute, from the record in this case that on Tuesday the 16th day of July, 1943, the said Joe Wesley while traveling along a public highway in the Southern part of Houston County, Alabama, in an automobile with some of his kin who, with him, were returning home from church, came upon Rass Godwin, and Addie Mae Godwin, who was also the sister of the said Joe Wesley, and who were fighting there by the side of the highway.

The evidence offered by the State tended to show that Rass Godwin, Willie Godwin, Jessie Pearl Godwin, Willie's wife, Wayman Godwin and Willie D. Godwin were all riding in Rass Godwin's automobile, and that Addie Mae Godwin, Rass Godwin's wife, stopped this car and had some words with Rass Godwin her husband; Rass Godwin got out of the car and Addie Mae struck him, and that thereupon Rass and his wife, Addie Mae, had a fight there on the side of the road. When the automobile in which Joe Wesley was riding reached the scene of the difficulty practically all of the occupants of that car which was being driven by Thelma Wesley, got out of that car and joined in the fight with the Godwins, who were traveling in Rass Godwin's automobile. One of the State's witnesses testified that during the fight, Joe Wesley struck, or stabbed, Willie Godwin in the neck with a screw driver.

Joe Wesley testified in his own behalf and, according to his testimony, the only

part he played in the free for all fight was to separate Willie Godwin and Addie Mae Godwin, and when he did this, he carried Addie Mae Godwin, his sister, back to the Wesley car and had nothing more to do with the fight. He denied that he struck Willie Godwin with a screw driver, or any other weapon, and denied that he had anything to do either with the commencement, the continuation or ending of the fight. He was corroborated by other witnesses who testified for the defendant.

The undisputed evidence tends to show that a number of the participants in the difficulty were wounded with bottles, knives, or other weapons.

Under all of the testimony it was for the jury to say whether or not Joe Wesley participated in the fight and as to whether or not he stabbed Willie Godwin with a screw driver.

It was further shown by the testimony in its entirety and without material dispute that after the fight Willie Godwin was carried to Dothan, Alabama, to Doctor Andress who treated and dressed his wound. This was on the day of the difficulty. On the Sunday following Willie Godwin was again taken to Dr. Andress, who again treated and dressed the wound. On Monday following Willie Godwin was carried to the office of Dr. Burdeshaw, who took off Dr. Andress' last dressing and put a new dressing thereon. He then returned to his home and that night began to complain of acute indigestion, or a pain in his stomach. One of his white neighbors, Mr. J. B. Joiner, who testified that he remembered in July (Friday, July 16th, 1943), when Willie Godwin is said to have been stabbed, and that after reaching Willie Godwin's home and after being informed by Jessie Pearl Godwin, the wife of Willie Godwin, that Willie had another attack of acute indigestion, that he told her that Willie needed a dose of salts, and that hot salts was good for him if he had acute indigestion, and that he had to return to the State line, some distance away, to get the salts and that he carried it back to Willie's home, and that Willie's wife gave it to him, and that he also gave her some powders—"Bismuth or something powders, indigestion powders," which were also given to Willie

Godwin, the deceased, by his wife. This was on Monday night and Willie Godwin died about 7 o'clock the following Tuesday morning, July 20, 1943.

■ Under the indictment against Joe Wesley, the defendant, the burden was on the State to prove beyond a reasonable doubt that Joe Wesley killed Willie Godwin by stabbing him with a screw driver. That is, the burden was on the State to prove not only that Joe Wesley stabbed Willie Godwin with a screw driver, but also that Willie Godwin died as the result of being stabbed by Joe Wesley with a screw driver.

■ The State offered Mr. J. M. Rash, an Assistant State Toxicologist, as a witness. During his direct examination, Mr. Rash, was asked if he had seen and observed wounds on bodies during the time he had been serving as Assistant Toxicologist and he said "Yes." Apparently the State was attempting to qualify the witness as an expert. It will be noted that the witness did not testify as to the examination he had made, and with the exception of knife wounds, he did not testify what instrument made the wounds which he did examine, or that he had ever seen a wound made upon the body of a human being with a screw driver. In the case of Clemons v. State, 167 Ala. 20, 52 So. 467, 471, our Supreme Court said: "The mere fact that he had seen blood flow from two dead bodies, on prior occasions, did not render him competent as an expert on this subject. To authorize a witness to give an opinion as an expert, it must appear that, by study, practice, experience or observation as to the particular subject, he had acquired a knowledge beyond that of ordinary witnesses; otherwise, he would not be an expert, and his knowledge, skill, or experience is not considered sufficient to inform the court or to guide the jury in reaching a correct conclusion upon the subject of inquiry. * * * Evidence like this was condemned by this court in the case of Rash v. State, 61 Ala. 89, in which case it was held that one who had been in the late war, and had observed the range of balls, in many gunshot wounds, but who was not a physician, a surgeon, or an expert, was not qualified to testify as to the range of the balls in some of the wounds

which he had observed, but that a physician or surgeon, with experience as to such wounds was an expert, and could give his opinion as to how the wounds were inflicted upon deceased, in a homicide trial."

Under the rule as above quoted it does not appear that the witness Rash, qualified as an expert to the extent that he was capable of giving an opinion as to the weapon or instrument with which the wound on the neck of the deceased was inflicted.

■ While this subject was being discussed and argued before the trial court that court said: "If he qualifies as an expert with reference to the things about which he has testified he would be entitled to give an opinion if other conditions were such that would justify an opinion. If he does not show that the wound was in the same condition or had not been tampered with from the time it was inflicted until this happened, then, of course, it all goes out as I stated while ago, and with that understanding prevailing, I will overrule the objection."

To this action of the court the defendant duly and legally excepted. The question was then repeated to the witness, as follows:

"Q.. What kind of instrument in your opinion made the stab wound that you found in this case on this body?

"A. The instrument that made the wound was a screw driver or some instrument of similar type."

The defendant objected to the above answer, and made motion to exclude the statement, "it was a screw driver."

The court overruled the objection or motion and the defendant excepted.

The defendant then moved to exclude that portion of the answer of the witness wherein he said, "or some instrument of similar type." The trial court overruled the defendant's said motion and the defendant duly and legally excepted. The defendant next moved to exclude the statement "that it was a screw driver or some instrument of similar type." The trial court overruled said motion and the defendant duly and legally excepted.

It is our opinion and judgment that the witness failed to qualify as an expert upon the subject of how stab wounds upon the human body and of the instruments with which they were inflicted could be differentiated and testified to by him, and that the trial court erred in permitting the witness, Rash, to testify that the wound upon the neck of the deceased was inflicted with a screw driver or some similar instrument. It will be noted that the instrument charged in the indictment was a screw driver. Proof of some other instrument would have created a variance.

The answer as given,—"That it was a screw driver or some instrument of similar type," was just as strong a statement that the instrument with which the wound was inflicted was not a screw driver, but some other instrument in type similar to a screw driver. Such a statement did not discharge the burden of proof upon the State even if said statement had been competent. The burden resting upon the State was that the wound was inflicted with a screw driver and nothing else.

At best, if the witness had qualified as an expert, he could only have given his opinion that the instrument with which the wound was inflicted was a screw driver. It was incompetent and illegal for him to say that said instrument was a screw driver because it was solely the province of the jury to determine with what instrument said wound was inflicted, and not that of the witness. Clemons v. State, supra. We have examined the cases cited by the Attorney General upon this question and are in accord with the holding in those cases under the facts therein set out. The facts of those cases differentiate them from the case at bar.

■■ Mr. Rash qualified as a Toxicologist. He further testified that he had been examining and performing autopsies on dead bodies of human beings since February, 1941, and that he made a special study in regard to autopsies since that time, and that he had studied anatomy in connection with his work. We think that from his statement which was undisputed, he was qualified as an expert to hold an autopsy on a dead human body. Mr. Rash testified that he examined the neck of Willie Godwin, the deceased, or that area of the neck of the deceased, upon which a stab wound was located, and that he made this examination at Hawks Funeral Home in Dothan, and

that this examination was made by him after the body of the deceased had been embalmed. He did not testify that he made any examination of the stomach and its contents or of the intestines of the deceased to see what condition existed in that area of the body of the deceased, although testimony offered for the defendant indicates that autopsy of the abdominal regions of the body of the deceased would have been proper and informative. Mr. Rash testified that he traced the wound found upon the outer surface of the neck of the deceased and that said wound extended inward through the windpipe and into the esophagus of the dead body. In fact this record shows that Mr. Rash made a dissection of the neck of the deceased and took therefrom all of the outer skin, the inner tissue between the outer skin and windpipe, the windpipe and the esophagus, including the wound upon the neck of the deceased and the immediate area in which said wound was located. He separated the outer skin from the inner tissue and the inner tissue from the windpipe and took out a section of the windpipe and also a section of the esophagus, all taken from the neck of the deceased. He opened up the section of the windpipe and made photographs of the outer skin, the inner tissue, the windpipe, and probably of the esophagus. These photographs were offered in evidence by the State and were objected to by the defendant. These photographs were four in number, the first of which was of entrance wound on the neck, the second was of the tissue under the skin; the third was of the tissue over the windpipe and the fourth was of the interior of the windpipe which showed five different and separate punctures of the interior of the windpipe. The defendant objected to each one of said photographs, "separately and severally, on the ground it isn't shown that the pictures, when they were taken, represented the true condition of this negro deceased, Willie Godwin, at the time of the death."

Mr. Rash qualified as an expert photographer. As to this he testified that—"I have been doing photography since I have been with the department, since 1941, all forms of laboratory photography and any other that might be necessary." The same observations extend to each of the other three photographs.

When Mr. Rash authenticated the above photographs he said that these photographs of the wound through the skin and the tissue and the windpipe were enlarged somewhere in the neighborhood of eight times. We understand this to mean that the photographs of the wound in the neck instead of being a photograph of the wound in its exact size was a photograph of a wound eight (8) times as large as the real wound, but otherwise presenting its correct state and contour. He testified that the wound on the outer skin was five sixteenth of an inch long and approximately one-eighth of an inch or a little less in width. The photograph of said wound instead of showing a puncture of the skin five sixteenth of an inch in length, shows a puncture practically three inches in length. Based upon analogous cases we declare the rule to be that when a photograph of a wound upon a dead body is offered in evidence it must be first shown by competent proof that the photograph is an accurate portrayal of the wound it is to depict, as of the time the wound was inflicted. This was not done in the case at bar and in our opinion the trial judge erred to a reversal in overruling the defendant's objection to the introduction of each of said photographs in evidence. Pinkerton **v.** State, 30 Ala.App. 103, 2 So.2d 323.

No competent witness testified as to the causal connection between the wound inflicted upon Willie Godwin and his death. In the very recent case of Warren v. State, Ala.App., 25 So.2d 51, 52,[1] we held that the corpus delicti might be established by circumstantial evidence. We declared that the corpus delicti "need not be proved by direct or positive testimony, and may be shown by evidence from which only a reasonable inference that the offense has been committed may be drawn by the jury, the proved facts and circumstances being considered together." In attempting to comply with this rule the State introduced upon the trial of this case a photograph of a wound said to have been inflicted upon the deceased that shows said wound to be prac-

1 Ante, p. 273.

388

tically three inches in length while the wound itself was only five sixteenth of an inch in length. The photographer testified in substance that when photographed the wound was magnified eight times. So when the jury considered the case they had before them the photograph of a wound much more extensive than the one actually inflicted upon the deceased and it was the jury who were to draw the reasonable inference that said wound was capable of inflicting and did inflict death upon the deceased, and this inference was based in part upon the above photographs.

Said photographs of said wound showed a wound which might have been inflicted with a bayonet, or a butcher knife, but certainly not one that was inflicted with a screw driver. It can be readily seen just how easy it was for the jury to draw the reasonable inference from the size and appearance of the wound, depicted by the photographs, that said wound from its size alone, was dangerous and capable of bringing about the death of the deceased. We do not know what the jury would have inferred from photographs depicting the wound in its actual size and appearance.

The error of the trial court in admitting said photographs in evidence was highly prejudicial to the defendant.

There was manifest error also in the action of the court in overruling defendant's motion for a new trial. Said motion was based upon numerous grounds, many of which were well taken.

For the errors pointed out, the judgment of the trial court is reversed, and this cause is remanded.

Reversed and remanded.