288 So.2d 757

. **Tommy BRASWELL, alias Tommy Teel**

v.

**STATE.**

**5 Div. 189.**

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

William J. Baxley, Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was convicted of murder in the first degree of Oscar Otis Daniel, Jr., by shooting him with a shotgun. The jury trying him fixed his punishment at life imprisonment in the penitentiary. He had pleaded not guilty and not guilty by reason of insanity. This is an appeal from a judgment in accordance with the verdict.

Evidence, undisputed on the trial and unquestioned on this appeal, was that the named victim was killed in the early evening or late afternoon, January 3, 1972, at a tavern in Lee County.

Witnesses for the State testified that deceased and his son were at the bar drinking beer; defendant came into the tavern, called the deceased by the salutation "Hey, Otis.", who then turned around. Defend-

J. Knox Argo, Montgomery, for appellant.

ant then shot him with a shotgun and ran out. They saw no weapon on the deceased at the time, but a pistol was found in the left pocket of the pants of deceased after he was shot. Testimony of a State toxicologist was to the effect that a post-mortem examination revealed a large chest wound and about seventy small puncture wounds surrounding it, that there was a piece of wadding in the large wound consistent with the shell of a 16 gauge shotgun.

Defendant testified that he had a fight with the deceased on New Year's night, 1972; that about an hour prior to the shooting, at another tavern a short distance from the place of the shooting, deceased threatened to kill defendant and "patted the print of a gun in his pocket" as he made the threat; that on previous occasions deceased had threatened to kill defendant. Defendant said that after deceased left the other tavern, defendant had several more beers and then went outside where he saw a shotgun in a truck; he took the shotgun from the truck with the intent to sell it; when he entered the tavern where the shooting took place he said to deceased, "How are you doing, Otis?"; that deceased then turned, pushed his son out of the way, pulled a pistol from his pocket, and defendant then turned and heard a shot from a shotgun. He testified that he didn't know whether he shot the gun, or who shot it, but that he didn't raise the gun to his shoulder. He said he didn't remember shooting the shotgun, and that when he came to himself he was out in the woods. He said that he had been drinking heavily but that he was not drunk. He said that before he entered the tavern where the shooting occurred, he did not think deceased was there, that he thought deceased had gone home.

Appellant's brief presents two assertions of error, stated as follows:

"Reversible error was committed when the State introduced evidence that the Defendant stole a vehicle prior to the shooting of the deceased.

"It was reversible error to allow the State to introduce into evidence a photograph which greatly magnified the wounds of the deceased."

As to the first claim of error, issue is joined in the respective briefs of appellant and appellee as to whether (1) testimony of defendant on cross-examination to the effect that he had stolen an automobile and gone to the scene of the shooting therein constituted inadmissible testimony and (2) whether or not such testimony was for the purpose of impeachment. We do not need to decide, and we think that we should not attempt to decide, either issue, because the testimony was given without objection or motion to exclude on behalf of defendant. At one time there was an objection "to anything about stealing the car.", but this was after testimony as follows:

"Q. An you went out there and stole a shotgun out of a truck, didn't you?

"A. Yes, sir.

"Q. And you also went, when you left there, to go look for Mr. Daniels, and you also stole a car, didn't you?

"A. Yes, sir.

"Q. From a Phillip Landrup?

"A. I don't know whose it was.

"Q. Now, you didn't say anything about taking that car, a while ago, did you, when Mr. Ingram was questioning you?

"A. No, sir."

■ In the absence of a timely objection to a question calling for incompetent testimony and in the absence of any motion to exclude incompetent testimony, no action of the trial court as to such testimony is required, and as to such testimony, there is nothing for the court on appeal to review. Walker v. State, 265 Ala. 233, 90 So.2d 221; Claridy v. State, 49 Ala.App. 254, 270 So.2d 685; Ayers v. State, 48 Ala.App. 743, 267 So.2d 533.

In insisting that the court committed reversible error in allowing the state to introduce into evidence a photograph, State's Exhibit No. VI, of the face and chest of deceased, which the witness who took the photograph said was enlarged, appellant relies upon Metcalf v. State, 40 Ala.App. 25, 108 So.2d 435, and Wesley v. State, 32 Ala.App. 383, 26 So.2d 413. In *Wesley,* reference is made to an enlarged photograph, but careful reading of the opinion discloses that more was involved that the mere increase in size of the photograph or print in relation to the size of the film in the camera when the picture was taken upon which the image was imposed, that the photograph involved in that case actually magnified eight times the object of which the picture was taken. It is that kind of a magnification or enlargement that constitutes a distortion and is objectionable, as not showing the true status or condition of the object pictured. It is clear here that the enlargement referred to was merely an increase in size of State's Exhibit No. VI in relation to the size of State's Exhibit No. V, both of which pictures were apparently taken from approximately the same position and were photographs of approximately the same part of the body, the face and chest, of deceased. State's Exhibit No. V is approximately 3½ X 3½ inches in size; State's Exhibit No. VI is an 8 X 10. Thus it can be said that State's Exhibit No. VI is more than six times the size of the film upon which the image was imposed, but it is not a magnification of the chest and face of deceased or of the penetrations of his chest. Magnification that is objectionable is not involved here. This is made crystal clear by Judge Cates in *Metcalf,* supra, in which he states the two kinds of photographic distortions that produce objectionable gruesomeness, in distilled language as follows:

"Gruesomeness becomes objectionable in a photograph only where there is distortion of either of two kinds; *first,* distortion of the subject matter as where necroptic or other surgery causes exposure of nonprobative views, e. g., 'massive mutilation,' McKee v. State, 33 Ala. App. 171, 31 So.2d 656; or *second,* focal or prismatic distortion where the position of the camera vis-a-vis the scene or object to be shown gives an incongruous result, e. g., a magnification of a wound to eight times its true size, Wesley v. State, 32 Ala.App. 383, 26 So.2d 413."

Two photographs of the same area of the chest and face of deceased are justified, as one is of the area of the chest prior to the lifting of the T-shirt worn by decedent while the other was after the T-shirt was lifted so as to admit the taking a photograph of the chest underneath the T-shirt. The picture taken while the T-shirt covered the chest is extraordinarily gory, which is readily explainable by the absorbent property of the shirt. Neither picture was distorted or misleading in any way. Each contributed to a better understanding of the facts in the case, including particularly the effect of the firing of the shotgun and the nature and extent of the resulting injury as charged in the indictment. It is to be kept in mind that the burden was upon the State to prove beyond a reasonable doubt that defendant killed Oscar Otis Daniel, Jr., *by shooting him with a shotgun,* as charged in the indictment.

The photographs just discussed were two of four photographs of the chest of decedent, all of which were objected to by defendant. The other two were State's Exhibits VII and VIII. The court sustained defendant's objection to Exhibit VII. Exhibits V and VI were taken while deceased was still lying on the floor where he was killed and within a fraction of an hour thereafter. Exhibit VIII was a photograph taken at approximately 12:50 the next day by State Toxicologist Roper while the body was in the funeral home and before anything had been done to it other than the cleaning of it. It was offered in connection with the witnesses testimony as to his post-mortem examination and finding that the gunshot wound was the cause of decedent's death.

**702**

We detect no effort on the part of the State to go beyond, or color or distort, the facts in the attempted portrayal by photographs of the cause and circumstances of the death of the alleged victim. Each photograph had its legitimate place in the chain of evidence, to establish the facts charged in the indictment, and the court properly overruled defendant's objection to each of them. We are reminded of what was said in McKee v. State, 253 Ala. 235, 44 So.2d 781:

"Courts and juries cannot be too squeamish about looking at unpleasant things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it."

We have considered all questions raised by appellant-defendant on appeal and prior to appeal, as shown by the record, and, in compliance with Title 15, § 389 Code of Alabama 1940, we have searched the entire record for any prejudicial error therein. Finding none, we conclude that the judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, Serving as a Judge of this Court under § 2 of Act. No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of this Court.

The judgment is hereby

Affirmed.

All the Judges concur except CATES, P. J., not sitting.