Dexter Goffer was indicted for the murder of Gloria Pearson, by shooting her with a shotgun, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of manslaughter as charged in the indictment" and the trial judge set sentence at ten years in the penitentiary.
On December 9, 1981, the appellant, his friend Rodney McGregor, his sister Helen Goffer, his girl friend, Gloria Pearson (the deceased) and her sister Victoria Whetstone were at the Goffer's home in Sylacauga, Alabama. The boys were playing cards while two of the girls, Helen and Victoria, were fixing Gloria's hair.
Gloria told the appellant they needed more hair rollers and asked him if he would get them some more rollers. There was testimony adduced at trial that the girls had been kidding the appellant, and when he got up from the sofa to go get the rollers he said, "I'll see what ya'll do when I get back." (R. 114).
The appellant went upstairs, got the rollers and a shotgun which he kept in his room because he was going hunting the next morning. When he came downstairs, one of the witnesses stated he said, "I'll see what ya'll do now." (R. 115). The shotgun was pointed toward the area where the three girls were when suddenly the shotgun fired. One witness said she saw the appellant's hand hit the trigger before it went off, but the appellant claimed he was attempting to break down the gun when it accidentally fired. When the appellant realized Gloria had been hit, he started crying and tried to call for an ambulance.
When the ambulance arrived, Gloria was transported to the Sylacauga Hospital and then to Brookwood Hospital in Birmingham and placed under the care of Dr. Benjamin Johnson, III, a plastic surgeon. Gloria's condition stabilized in the emergency room and she was soon taken into surgery. She underwent debridement and her wounds were cleaned. Part of her jaw had to be removed because it had been severely damaged.
The next day she underwent further debridement and her teeth were wired together. A tracheotomy was performed so she could breathe easier and a skin graft was placed on the inside of her cheek.
Four days later, she developed a collapsed lung and a bronchoscopy was performed. There was some evidence of pneumonia so the tracheotomy tube was left in place for suction in order to remove mucus.
Gloria's condition once again stabilized and she was able to sit in a chair for a short period of time. On December 23, 1981, she began bleeding from her tracheotomy tube. *Page 898 
Her blood pressure dropped, she went into shock and was unable to breathe. All means of resuscitation were unsuccessful and she was pronounced dead at 3:15 a.m.
The bleeding was caused by a condition known as a tracheo-carotid artery fistula, which was probably caused by pressure created by the tracheotomy tube producing a hole between the windpipe and a major artery. Dr. Johnson testified that Gloria bled to death from a fistula in her trachea and artery, which was secondary to her tracheotomy, which was done because she had the shotgun wound to the face.
Lauden Yates, a firearms expert with the Department of Forensic Sciences testified that the hammer must be cocked and the trigger pulled in order for this shotgun to fire because of a safety mechanism on the gun. He said that pulling the trigger would require a "pretty good pull". (R. 195).
The appellant testified that he didn't remember cocking the gun or pulling the trigger and denied he made any statements to the girls before he went upstairs. He claimed he accidentally hit the trigger when he was breaking the shotgun down.
 I
The appellant contends the trial judge erred by allowing admission of slides portraying the deceased's wounds.
 ". . . As a general rule photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Thigpen v. State, 50 Ala. App. 176, 277 So.2d 922 (1973))"
 ". . . Furthermore, photographs which depict the character and location of external wounds on the body of a deceased victim are admissible even though they are cumulative evidence based upon an undisputed matter. Hines v. State, Ala.Cr.App., 365 So.2d 320, cert. denied, Ala., 365 So.2d 322 (1978); Ellenburg v. State, Ala.Cr.App., 353 So.2d 810 (1977). The fact that a photograph is gruesome and ghastly is no reason for excluding it, if relevant, even if the photograph may tend to inflame the jury. Richards v. State, Ala.Cr.App., 337 So.2d 171, cert. denied, Ala., 337 So.2d 173 (1976)."
Carpenter v. State, 400 So.2d 417, 422 (Ala.Crim.App. 1981).
These photographs were admitted during the testimony of Dr. Johnson. He testified extensively concerning her injuries and the surgical procedures that had to be undertaken. We feel these photographs, even as gory as they were, aided the jury in understanding the location of her wounds and the extent of the decedent's injuries from the shotgun blast.
It is not relevant that these photographs were taken at the hospital rather than at the scene of the crime. Photographs of the deceased in a murder prosecution may be made at the scene, the hospital, the funeral home or during the autopsy and will be properly admitted if this is done. See Carpenter v. State, supra.
The appellant also objects to the introduction of the photographs because they were slides and therefore produced a magnification of the wounds and a distortion of the injuries. This court stated in Metcalf v. State, 40 Ala. App. 25,108 So.2d 435 (1958) that:
 "Gruesomeness becomes objectionable in a photograph only where there is distortion of either of two kinds; first, distortion of the subject matter as where necroptic or other surgery causes exposure of nonprobative views, e.g., `massive mutilation,' McKee v. State, 33 Ala. App. 171, 31 So.2d 656; or second, focal or prismatic distortion where the position of the camera vis-a-vis the scene or object to be shown gives an incongruous result, e.g., a magnification of a wound to eight times its true size, Wesley v. State, 32 Ala. App. 383, 26 So.2d 413."
Braswell v. State, 51 Ala. App. 698, 701, 288 So.2d 757 (1974). *Page 899 
Neither of these distortions existed in this case. The slides were just enlargements of photographs and the wounds were shown in relation to the deceased. The slides gave the jury a better understanding of the nature and gravity of the deceased's injuries, and we do not believe the slides distorted the injuries or misled the jury in any way.
Furthermore, the admission of such photographs are left to the sound discretion of the trial judge and this court will not reverse unless there has been a gross abuse of that discretion.Cook v. State, 52 Ala. 159, 290 So.2d 288 (1974).
This did not occur in this case and therefore, the photographs were properly admitted.
 II
The appellant was found guilty of manslaughter which is defined by § 13A-6-3, Code of Alabama 1975. The relevant portion of that statute states as follows:
"A person commits the crime of manslaughter if:
 "He recklessly causes the death of another person . . ."
Ala. Code § 13A-6-3 (a)(1) (1975).
The key word in this provision is "recklessly" and the Code states that:
 ". . . A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
Ala. Code § 13A-2-2 (3) (1975).
A substantial and unjustifiable risk that someone could have been killed or seriously injured existed in this case. The appellant knew how to use the shotgun and was aware that if it discharged someone might be shot. At best, the appellant was grossly careless when he brought the loaded shotgun downstairs.
This court finds that there was sufficient legal evidence adduced at trial from which the jury could have found the appellant guilty of manslaughter. Bender v. State,420 So.2d 843 (Ala.Cr.App. 1982).
Therefore, for the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
 *Page 265