TYSON, Judge.
Willie Byrd Knight was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter and the trial judge sentenced him to seven years’ imprisonment in the penitentiary.
Calvin Grooms testified that at approximately 10:00 on the night of February 20, 1981, he and Stewart Maddox went to the 500 Club in Houston County. The two drank beer until about 12:30 a.m. and then went outside to Grooms’ car. They got in the car and Grooms started the ignition. Maddox told Grooms to give him thirty minutes and he got out of the car and went inside. Grooms waited in the car.
About ten minutes later, Grooms saw appellant’s wife backing Maddox out of the club with a silver gun in her hand. After a few moments, Mrs. Knight shot the gun in a downward position. Maddox didn’t seem to be hurt and Grooms drove over to Maddox. Maddox got in the car and Grooms started to back the car up.
At this point, Knight, the appellant, came out of the club with a different gun and approached the car. Maddox told the appellant not to shoot into the car and then got out of the car. Grooms then heard two shots go off and saw Maddox lying on the ground with blood on his side. He then got out of the car, helped Maddox into the vehicle, and took him to the hospital.
Bruce Hudson, an officer with the Do-than Police Department, arrived at the 500 Club at 2:21 a.m. on the morning of February 21,1981. There were no vehicles in the parking lot and he secured the scene. He found blood in the parking lot.
Dr. John Frederick Hilbert was on duty in the Emergency Room at the Southeast Alabama Medical Center when Grooms brought Maddox into the hospital. Maddox was pronounced dead on arrival as his body had suffered a gunshot wound to the hip area and a wound to the right side of the head.
Jackie Mendheim, an investigator with the Dothan Police Department, stated he was called to the medical center at 1:50 a.m. on February 21, 1981. After photographing Maddox’s body, he went to the 500 Club. No one answered when he knocked on the door to the club.
Mendheim then proceeded to a house that appellant was in the process of building which was located near the club. The appellant, Knight, was there and he told Mendheim that his pistol was on top of the refrigerator at the club.
Mendheim returned to the club and found the gun, a .38 blue Tarus. It contained two spent shells and four live rounds. Mendheim then obtained Mrs. Knight’s gun, a stainless steel Smith and Wesson .357 Magnum. It contained one spent shell and five live rounds.
The appellant and his wife then went to the police department. It was ascertained that Mrs. Knight had fired her gun downward into a cement area outside of the club. The appellant was then advised of his Miranda rights. He signed a waiver of those rights and made a statement.
The appellant, Knight, stated that his wife had some trouble with Maddox on this particular night and asked him to leave. When she got him to the door, she shot into the ground so he wouldn’t come back in. The appellant was inside when he heard the shot and then went outside with his gun. When the appellant got to the door, Maddox was on his way back inside and the appellant told him to leave. Maddox then went to Grooms’ car and got in. The appellant told Grooms’ to take Maddox home and Maddox jumped out of the car. The two began struggling and the gun went off twice. Maddox then got up and got in Grooms’ car and they left.
Dr. Thomas Gilchrist, a pathologist with the Department of Forensic Sciences, testified that he performed an autopsy on the body of Stewart Maddox. He stated that the body had sustained a gunshot wound to the left hip area. This bullet passed across the thigh and lacerated the femoral artery and exited on the inside of the thigh. *519 There were several lacerations and abrasions on the head which Gilchrist determined were the result of blunt force trauma. The cause of death was determined to be a gunshot wound to the body.
Rebecca Knight testified that she was running the club on the night in question and Maddox came in with Grooms about 11:00 p.m. At some point, Bobby Moore, who runs the disco at the club, complained to her that he was having trouble with Maddox. Mrs. Knight asked Maddox what the problem was and he replied that Moore was flirting with his woman. Maddox threatened Moore and said he was going to kill him. Mrs. Knight asked Maddox to leave but he wouldn’t go.
She then went to the living area of the club where the appellant was and told him she was having trouble with Maddox. The appellant then went into the bar and asked Maddox to leave. Maddox wouldn’t leave so Mrs. Knight grabbed him by the arm and took him to the door and he went outside. She had her gun because Maddox said he was going to get his gun and get Moore.
After a brief conversation with another party, Maddox started toward the door again and Mrs. Knight fired her gun into the concrete area by the door. Maddox then got in Grooms’ car and the car started backing up.
The appellant then came out of the club and walked over to Grooms’ car. The car stopped and Maddox jumped out and started scuffling with the appellant, Knight. The appellant’s gun went off twice. The appellant yelled for her to get Maddox away and she hit him on the head with her gun. Maddox got up and said he’d be back and got in Grooms’ car. Mrs. Knight said she saw blood but didn’t know Maddox was dead until the police came to the club.
Bobby Moore testified that he was playing music at the club on the night in question and a woman named Rebecca Jordan kept coming up to him and talking to him. Maddox came up to Moore and accused him of flirting with his woman and threatened him. Moore turned off the music and Mrs. Knight told Maddox to leave. Maddox continued to argue and then the appellant came in and asked him to leave but he wouldn’t. Finally, Maddox started to leave but told Moore he was going to get him. Mrs. Knight went outside with Maddox and Moore heard a gunshot. Moore then left the club.
Willie Riggins, who was working at the club that night, testified and corroborated Mrs. Knight’s testimony.
Annie Hayes stated that she was at the club on the night in question. After she heard the initial gunshot, she went outside and tried to talk to Maddox. He was cursing at Mrs. Knight and she was telling him he could not come back in the club. Maddox told Hayes he could handle himself and she left.
The appellant took the stand and related basically the same facts that had been stated by the other defense witnesses. Knight stated the gun went off during his struggle with Maddox. The appellant said he knew Maddox was hurt but did not know he was dead until the police came to his house and arrested him.
I
The appellant contends that there was insufficient evidence to convict him of the offense of manslaughter.
“A person commits the crime of manslaughter if:
“He recklessly causes the death of another person ...” Ala.Code § 13A-6-3(a)(l)(1975).
“(3) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by statute defining an offense when he is aware and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” Ala.Code § 13A-2-2(3) (1975).
*520 Certainly Knight, the appellant in this case, acted recklessly by going outside with a loaded gun after all the trouble that had been encountered that night by the appellant, his wife and Moore with Maddox. He should have been aware, particularly with the state of mind that Maddox was in, that a fight could ensue and that Maddox or someone else could have been shot with his gun.
As for the appellant’s contention that he acted in self-defense, this was a question for the jury which they properly resolved. Townsend v. State, 402 So.2d 1097 (Ala.Crim.App.1981); Atchley v. State, 393 So.2d 1034 (Ala.Crim.App.1981).
We have thoroughly recited the facts of this case. This court holds that there was sufficient evidence presented at trial from which the jury could conclude that the appellant was, in fact, guilty of the offense of manslaughter. Goffer v. State, 430 So.2d 896 (Ala.Crim.App.1983).
This cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.