[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 659 
In June 1987, the appellant was indicted by a Jefferson County grand jury for the intentional murder of Hayward Green, in violation of § 13A-6-2, Code of Alabama (1975). In November 1987, appellant was found guilty as charged in a jury trial, and was sentenced to life imprisonment. This appeal follows.
 I.
The appellant first argues that the trial court erred in refusing to give his requested written jury charges 13 and 16, which pertain to "heat of passion" or "provocation" manslaughter. Appellant's requested jury charge No. 13 reads as follows:
 "13. To sustain the charge of manslaughter in this case, the State by the evidence must prove beyond a reasonable doubt each of the following elements of the offense:
"First: that Hayward Glenn Green is dead;
 "Second: that Sanchez Lee caused the death of Hayward Glenn Green; that is that he died as a result of being shot by Sanchez Lee; and
 "Third: that in committing the act or acts which caused the death of Hayward Glenn Green Sanchez Lee acted with the intent and purpose to cause his death, but that he did so due to a sudden heat of passion caused by legal provocation and before a reasonable time for the passion to cool and for reason to reassert itself."
Appellant's requested jury charge No. 16 reads as follows:
 "16. A person commits a crime of manslaughter: (1) if he recklessly causes the death of another person; or (2) if he causes the death of another person under circumstances which would otherwise constitute murder as I have previously instructed you, but in doing so he was moved to act by a sudden heat of passion caused by lawful provocation and before there had been a reasonable time for the passion to cool and for the reason to reassert itself."
In this Court's opinion, both of the appellant's requested jury charges are confusing and misleading, in that both charges refer to the terms "heat of passion" and "lawful" or "legal" provocation, but fail to define or explain these terms. Refusal to give requested charges is not improper, where such charges are confusing or misleading. Bogan v. State, 529 So.2d 1029,1032 (Ala.Cr.App. 1988); Yarber v. State, 437 So.2d 1319
(Ala.Cr.App. 1981), rev'd on other grounds, Ex parte Yarber,437 So.2d 1330 (Ala. 1983); Payne v. State, 419 So.2d 286
(Ala.Cr.App. 1982). Further, other decisions of this Court appear to indicate that the failure of a requested jury charge to define an essential term contained therein is, in itself, reason for the court to refuse to give the charge. See Gautneyv. State, 284 Ala. 82, 222 So.2d 175 (1969); Wakefield v.State, 447 So.2d 1325, 1327 (Ala.Cr.App. 1983); Trenor v. State,354 So.2d 1180, 1184 (Ala.Cr.App. 1977), cert. denied,354 So.2d 1185 (Ala. 1978).
Moreover, this issue has not been properly preserved for this Court's review. At the conclusion of the court's instructions to the jury, the following discussion took place out of the hearing and presence of the jury:
"[BY MR. JAFFEE]
 "I except to your Honor refusing to given certain requested charges, all of which have been refused, 1 through 31. *Page 660 
In particular, exception to Requested Charge 4: You instructed that if the facts and circumstances established by the prosecution are susceptible to two different inferences — I'm not reading it now, I speaking from memory —
"THE COURT: Yes.
 "MR. JAFFEE: — one which points to guilt and one which points to innocence, then you're obligated to adopt that inference that points to innocence.
 "Secondly, Instruction Number 5: If the jury can reconcile the evidence before with any reasonable hypothesis consistent with the innocence of the accused, it is their duty to do so and find the accused not guilty.
 "Next, Number 13, with respect to manslaughter. We believe that the jury should also be instructed on the other alternatives of manslaughter as enumerated in Charge Number 13.
"THE COURT: Provocation manslaughter?
"MR. JAFFEE: Yes, sir.
 "THE COURT: That is in intentional homicide, Richard, that would be greatly at odds with your intoxication mitigation.
"MR. JAFFEE: Yes, sir.
 "THE COURT: I thought about provocation manslaughter, I don't think it's compatible with that charge on reckless manslaughter.
 "MR. JAFFEE: Same thing with Charge Number 16, similarly.
"THE COURT: Yes." (Emphasis supplied.)
In the case sub judice, "[c]ounsel's objection to the refusal of his requested charges . . . does not satisfy the requirement that a party 'state with particularity the grounds of theirobjection.'" Bogan, supra, at 1031 (emphasis in original) (citation omitted). See also, Temp. Rule 14, A.R.Crim.P. General, non-specific objections fail to preserve the issue of the trial court's failure to give a defendant's requested jury charge. Brannon v. State, 549 So.2d 532 (Ala.Cr.App. 1989). Thus, appellant's argument as to this issue must fail.
 II.
The appellant likewise contends that the trial court erred to reversal in refusing to give his requested written jury charge No. 27, which pertained to the violent character of the victim. The appellant's requested charge No. 27 reads as follows:
 "The Court charges the jury that if they believe from the evidence that the deceased (Hayward Glenn Green) was of a violent and bloodthirsty character they are to take such evidence into consideration in determining the degree of the defendant's guilt, provided they find him guilty."
We note, however, that the following instruction was given by the Court in its oral charge to the jury:
 "More in the area of testimony. We had some testimony delivered relative to the deceased person's reputation in the community; did we not? Reputation for being a violent or turbulent person, I believe is how it was phrased. And moreover, for carrying a pistol, delivered by one of the witnesses yesterday, if I recall.
 "Why did that come to your attention? That comes to your attention for you to consider in assessing whether or not the deceased person may have aggressed against the Defendant Lee, and/or to throw light on the subject of whether or not Mr. Lee, the defendant, apprehended that his life was in peril. More on self-defense later."
We find that the trial court's oral charge to the jury "substantially and fairly" states the principles embodied in the appellant's written requested instruction. Section12-16-13, Code of Alabama (1975). " 'The law is well-settled that a refused charge, stating correct principles of law, which is adequately and substantially covered in the court's oral charge or in given charges does not constitute error.' " Batesv. State, 484 So.2d 1206, 1208 (Ala.Cr.App. 1986) (citations omitted). The refusal to give a requested charge on the effect of evidence of bad character requires reversal only where there is evidence of bad character and the substance of the charge is not *Page 661 
covered by the trial court's oral charge. Wright v. State,494 So.2d 726, 732 (Ala.Cr.App. 1985), aff'd, Ex parte Wright,494 So.2d 745 (Ala. 1986) cert. denied, 479 U.S. 1101,107 S.Ct. 1331, 94 L.Ed.2d 183 (1987); Ashlock v. State, 367 So.2d 560
(Ala.Cr.App. 1978), cert. denied, 367 So.2d 562 (Ala. 1979). The trial court therefore did not err by refusing to give the appellant's requested jury instruction.
 III.
The appellant argues that the trial court erred by instructing the jury as follows:
 "Now, how to tell you to go about assessing what the evidence was. Of course, there was a difference in the testimony, you have got to decide what is the truth. Use your common, everyday horse sense in sizing up somebody's testimony, evaluating a person.
 "What are some of the criteria that you might go by? Demeanor, manner of testimony. How did a witness impress you with his demeanor or manner of testimony? Interest in the outcome of the case. Does a witness have an interest in what the ultimate result might be? That is a criterion you can consider if you deem it is germane.
 "Of course, Mr. Lee, the defendant, testified. He is obviously interested in the outcome of the case, and you may consider that if you think it is appropriate. Understand that I'm not saying to you that you can just capriciously disregard someone's testimony because they might be interested in the outcome of the case. You don't do anything capriciously, but you may consider it if you think it is germane.
 "Any bias or prejudice or anything you observe about a witness you may consider, if you think it would color the testimony. Contradictions in the testimony are all considered.
 "If you think that someone has lied to you, if they told you a falsehood intentionally about a material fact in the case, there is an axiom of evidence that says you are entitled to disregard all of that witness' testimony. Again, if you think that they intentionally misled you about a material matter." (Emphasis supplied.)
Appellant contends that this charge was, in effect, a comment on the evidence implying that his testimony was untruthful and deprived him of the right to a fair trial. This Court does not agree.
In Banks v. State, 448 So.2d 973 (Ala.Cr.App. 1984), this Court addressed the propriety of a charge nearly identical to that in the present case. In affirming the judgment of the trial court, we stated as follows:
 "One of the duties of the trial court is to instruct the jury about the accused's testimony. This charge correctly states the law and the jury's duty and should be given in every case where the defendant testifies."
Id. at 977 (emphasis supplied).
 IV.
The appellant argues that the trial court erred to reversal by admitting into evidence, over counsel's objection, numerous photographs and slides showing the body of the victim,[1]
including a slide of the victim's surgically amputated leg. He argues that these photographs and slides had no probative value, that they were cumulative, and that they served no other purpose than to inflame the jury.
At trial, a hearing was held on appellant's motion to suppress the photographs and slides of the victim's body. Dr. Robert Brissie, professor of pathology, at the University of Alabama at Birmingham Medical School, and chief coroner and medical examiner of Jefferson County, testified that he performed the autopsy on the victim, Hayward Green, and that Green died from the loss of blood resulting from six or *Page 662 
seven shotgun blasts. Dr. Brissie testified that the photographs were illustrative of the wounds received by the victim, and that sometimes several photographs were taken of the same wound in order to illustrate the area of the wounding, to show the entrance and exit sites, and to show the angles of the wounds. Some of the photographs of the victim contained wood probes extending outward from wounds. Dr. Brissie explained that the probes were necessary to demonstrate the angle of pellet wounding, and in some instances, to show wadding marks, or injuries from the wadding. Certain other photographs showed surgical appliances, such as a naso-tracheal, naso-gastric tubes, and intravenous lines in the body of the victim. Dr. Brissie testified that these photographs depicted the condition of the victim's body at the time the medical examiner's office received it from the hospital. Finally, Dr. Brissie testified that the photograph of the victim's surgically-amputated leg was necessary to show the position of the victim's body during the attack. At the conclusion of the suppression hearing, the trial court denied the appellant's motion.
At trial, Dr. Brissie testified that he performed the autopsy on Hayward Green and explained to the jury that when he examined Mr. Green's body, it contained several surgical alterations, such as naso-gastric and chest tubes and intravenous lines. Dr. Brissie testified that he observed numerous shotgun wounds to the body of the victim and an amputated left leg. Dr. Brissie testified that one can generally approximate the distance at which a shotgun is fired, because the further away the gun is from the target, the wider the spread pattern of pellets will be. Dr. Brissie explained that the powder burns to be victim's right hand indicated that this shot was fired at close range, and that the femurs of both of the victim's legs were broken by gunshots fired by the appellant. Dr. Brissie further explained that, during the autopsy of Mr. Green, he had ordered that slide and Polaroid photographs of Green's body be taken to illustrate the injuries Green had received.
Before allowing them to view the slides of the victim's body, the trial court instructed the jurors as follows:
 "THE COURT: Let me say this, folks. You are about to view some slides, as you know. You will have the photographs that correspond to the slides in the jury room when you retire.
 "These slides that Doctor Brissie is going to go over with you now do depict, as you can well imagine, very grievous wounds. I am sure that Doctor Hamrick, in his studies, has seen pictures like these. Perhaps Mrs. Fletcher — it — in your two years of nursing, ma'am?
"JUROR FLETCHER: Yes.
 "THE COURT: — may have seen pictures that depict physical wounds to people.
 "This is important. This is an instruction that I am giving you now: I am telling you these photographs are going to be gruesome. The Court is allowing the photographs into evidence for you to view and utilize, draw upon, in however way they might shed light on the issues in this case.
 "What do the photographs prove? Now, my instruction to you is not to be prejudiced or inflamed, have a knee jerk-type reaction by virtue of viewing the photographs, but to please view the photographs as dispassionately as you can. Again, with a view toward how the photographs might illustrate some of the issues in the case, some of the questions in the case. I am counting on you to do that.
 "Is there anyone that feels like they cannot abide by the Court's instruction? Good. All right."
Thereafter, while the jury viewed the slides, Dr. Brissie testified concerning the nature of the injuries the slides depicted. Dr. Brissie, where appropriate, explained to the jury any alteration that had been made to the victim's body (e.g., intravenous lines, and chest and naso-gastric tubes, etc.) during the medical treatment of the victim, as well as the purpose of the alteration. Dr. Brissie also explained to the jury the purpose of the wood probes that extended from some of the victim's wounds. Dr. *Page 663 
Brissie testified that bullets had penetrated the victim's colon, stomach, left kidney, and pancreas, and stated that there were five holes in his stomach. Dr. Brissie's testimony indicated that the bullets had entered the victim's body from the back and side, and that the cause of his death was the loss of blood resulting from multiple gunshot wounds. With respect to the amputated left leg of the victim, Dr. Brissie explained to the jury which wounds were the result of surgical alteration, as well as which, in his opinion, resulted from the shotgun blasts. Dr. Brissie also testified that the pellets entering the left leg travelled in an upward motion.
In Bankhead v. State, [Ms. 6 Div. 370, Sept. 29, 1989] ___ So.2d ___ (Ala.Cr.App. 1989), released this date, we addressed facts remarkably similar to those now before this Court. In holding that the trial court did not abuse its discretion by admitting into evidence at a capital murder defendant's sentencing hearing gruesome photographs and slides made during the victim's autopsy, Judge Taylor stated the following:
 "Generally, photographs are admissible into evidence in a criminal prosecution 'if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact of evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.' Magwood v. State, 494 So.2d 124, 141 (Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995. 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). See also Woods v. State, 460 So.2d 291 (Ala.Cr.App. 1984); Washington v. State, 415 So.2d 1175
(Ala.Cr.App. 1982); C. Gamble, McElroy's Alabama Evidence, § 207.01(2) (3d ed. 1977).
 "It has long been the law in Alabama that, '[p]hotographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.' Burton v. State, 521 So.2d 91, 92 (Ala.Cr.App. 1987). See also Kinder v. State, 515 So.2d 55 (Ala.Cr.App. 1986). The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence as long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury. Magwood v. State, supra, 494 So.2d at 141. See also Hutto v. State, 465 So.2d 1211 (Ala.Cr.App. 1984); Jones v. State, 439 So.2d 776 (Ala.Cr.App. 1983); Godbolt v. State, 429 So.2d 1131 (Ala.Cr.App. 1982).
 "This rule of law applies not only to photographs, but to photographic slides as well. Goffer v. State, 430 So.2d 896 (Ala.Cr.App. 1983). In Goffer, we wrote as follows:
 " 'The appellant also objects to the introduction of the photographs because they were slides and therefore produced a magnification of the wounds and distortion of the injuries. This court stated in Metcalf v. State, 40 Ala. App. 25, 108 So.2d 435 (1958), that:
 " ' "Gruesomeness becomes objectionable in a photograph only where there is a distortion of either of two kinds; first, distortion of the subject matter as where necroptic or other surgery causes exposure of nonprobative views, e.g., 'massive mutilation,' McKee v. State, 33 Ala. App. 171, 31 So.2d 656 [1947]; or second, focal of prismatic distortion where the position of the camera vis-a-vis the scene or object to be shown gives an incongruous result, e.g., a magnification of a wound to eight times its true size, Wesley v. State, 32 Ala. App. 383, 26 So.2d 413 [1946]."
 " 'Braswell v. State, 51 Ala. App. 698, 701, 288 So.2d 757 (1974).
 " 'Neither of these distortions existed in this case. The slides were just enlargements of photographs and the wounds were shown in relation to the deceased. The slides gave the jury a better understanding of the nature and gravity of the deceased's injuries, and *Page 664 
we do not believe the slides distorted the injuries or misled the jury in any way.'
"430 So.2d at 898-99."
Id. at ___.
The appellant argues that the photographs and slides of the victim's body had no probative value, but were offered into evidence simply to inflame the passion of the jury. In this Court's opinion, such an argument funds little support in the record of this case.
Although the appellant claimed at trial that the victim had fired at him first and that he was acting in self-defense, the photographs and slides depicting the victim's wounds, together with the testimony of Dr. Brissie, clearly establish that Mr. Green was shot in the back, while walking away from the appellant. Further, Terry McCants testified for the prosecution that, after Mr. Green fell to the ground, the appellant stood over him and continued to fire at him. The appellant, however, denied at trial standing over Mr. Green and shooting him. Dr. Brissie's testimony as to the pellets recovered from the victim's amputated left leg and from his left thigh tends to support the State's argument that Green was, in fact, on the ground when the appellant fired the final three or four shots at him. While admittedly gruesome, and possibly inflammatory, the photographs and slides were highly relevant as to the issue of self-defense and were properly admitted into evidence.Magwood v. State, 494 So.2d 124, 141 (Ala.Cr.App. 1985), aff'd,494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995,107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
The appellant contends that the slides magnified, and thus distorted, the size of the victim's wounds and should therefore been inadmissible under the rule of law in Wesley v. State,32 Ala. App. 383, 26 So.2d 413 (1946). In the case sub judice, however, the projection of the slides merely presented enlargements of the actual photographs taken of the victim, showing the wounds in relationship to the deceased. Cf. Gofferv. State, 430 So.2d 896, 898-99 (Ala.Cr.App. 1983). Here, there is no "incongruous result" due to magnification of the wounds, as in Wesley, supra.
The appellant argues that, because the amputation of the victim's left leg was the result of the autopsy and not the shotgun blasts,[2] the court erred in admitting the photograph and slide of the victim's left leg into evidence. Initially, we note that Dr. Brissie indicated in his testimony that the leg was surgically amputated, and that the amputation was not caused by the shotgun blasts. Moreover, appellant's suggestion that the "mutilation" of the victim's leg was the result of something other than the shots he fired is factually incorrect. At trial, Jack Jackson testified that "his legs was almost off, both of them. You could see a little white part of it." It is clear to this Court, from the testimony of Mr. Jackson, that the victim's leg was very nearly amputated from the force of the shots fired by the appellant. The photograph and slide of the amputated leg accurately depicted the damage inflicted by the appellant, and their admission into evidence was not grounds for reversal. Goffer, supra.
In the present case, the photographs and slides of the victim's body fairly and accurately portrayed the injuries that the appellant inflicted and were highly probative to matters in issue at appellant's trial. Dr. Brissie continuously pointed out the wooden probes found in some of the victim's wounds, and carefully explained their purpose to the jury. Dr. Brissie likewise pointed out any wounds to the victim's body that were sustained during surgery and were not caused by the appellant's attack and explained to the jury the purposes of the surgical appliances that remained in the victim's body when the photographs were taken. Moreover, the trial court carefully explained to the jurors prior to the slide presentation that the slides were not intended to prejudice or inflame *Page 665 
them but were for the purposes of shedding light on certain issues in this case.
For the reasons stated above, the trial court did not err in admitting the slides and photographs into evidence to aid the testimony of Dr. Brissie.
 V.
The appellant contends that the trial court erred to reversal in allowing the prosecutor to make several derogatory comments about him during closing arguments. Again, this Court does not agree.
 A.
The appellant, who failed to return to court for the final day of his trial, first argues that the court erred by permitting the prosecutor to make several references to his absence in closing argument.
The record indicates that, immediately prior to closing arguments, counsel made a motion in limine, asking the court to prohibit the State from referring to the appellant's absence from the trial in its closing argument. The court denied counsel's motion, and State made several remarks concerning the appellant's absence during its closing argument. The record indicates that trial counsel made no objection at trial to the prosecutor's comments regarding the appellant's absence from trial.
In Phillips v. State, 527 So.2d 154 (Ala. 1988), our Supreme Court held the following:
 "It is the law 'that an appellant who suffers an adverse ruling on a motion to exclude evidence (or other matters, e.g., argument of counsel), made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds therefor at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds therefor are not necessary. See C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981).' Liberty National Life Ins. Co. v. Beasley, 466 So.2d 935, 936 (Ala. 1985)."
Id. at 156.
In the instant case, counsel failed not only to object at trial to the references of which he now complains, but also failed to obtain the express acquiescence of the court that would make an objection at trial unnecessary. This issue is therefore not preserved for appellate review.
 B.
The appellant likewise objects to certain comments made during closing arguments by the prosecution that characterized him as a vicious person. The record indicates that the following occurred during the State's closing argument:
 "And that gutless wonder won't come to court today to look you in the eye. That coward, that vicious brute — and that is exactly what he is — that calculating, cowardly, vicious brute went out hunting. He went out hunting a human being, Hayward Glenn Green —
"MR. JAFFEE: May it please the Court —
 "MR. McGREGOR: — and he found him and he shot him and shot him and shot him.
 "MR. JAFFEE: — I object to the last statement about the characterization of vicious human being, cowardly. I object to that.
"THE COURT: All right.
"MR. JAFFEE: You overrule?
 "THE COURT: I don't overrule, I will ask Mr. McGregor not to characterize the defendant again —
"MR. McGREGOR: Yes, sir, Your Honor.
"THE COURT: — in such terms."
In the present case, there is no adverse ruling for this Court to review. Although the trial court did not expressly rule on counsel's objection, he warned the prosecutor to refrain from referring to the appellant in those terms, and the appellant's attorney made no request for a curative instruction to be given, or motion to strike *Page 666 
or exclude the comment. Under these circumstances, we find no basis for error. Thomas v. State, 393 So.2d 504
(Ala.Cr.App. 1981); Proctor v. State, 391 So.2d 1092
(Ala.Cr.App. 1980).
 C.
Appellant argues that certain other references derogatory to him that were made in closing argument by the prosecution constitute reversible error. A review of the record, however, indicates that no objection to these references were made by trial counsel. Therefore, this issue is likewise not preserved for our review. Where defendant's attorney makes no objection following the prosecutor's allegedly disparaging remarks, a claim of error based on improper argument of counsel cannot be made on appeal. Thomas, supra.
 VI.
The appellant argues that the trial court erred by allowing the prosecution to comment on his character. The record indicates that, during cross-examination of the appellant, the prosecutor asked him if, after an earlier altercation with the victim, and prior to the killing, he had gotten into a fight or disagreement with anyone else. Counsel objected on the grounds that any such disagreement was irrelevant to the issues in this case, and the court sustained his objection. Thereafter, the following occurred:
"MR. McGREGOR: Judge, I will make a proffer.
"THE COURT: All right.
 "Q. Did you ever threaten anyone back during that period of time?
 "MR. JAFFEE: I object, Judge, and move for a mistrial. This has nothing to do with what we're talking about.
 "THE COURT: Sustained. We can talk about it privately if you want to."
The prosecutor then continued cross-examination of the appellant, and no further objections were made.
Initially, we note that the matters involved in this issue do not constitute "comments" by the prosecution as to the appellant's character, but, rather, are simply questions posed to the appellant, objection to which was sustained by the court. Moreover, the only objection to the questions raised at trial was a lack of relevance. On appeal, however, appellant argues that the questions constituted an impermissible comment on the appellant's character. The statement of specific grounds for an objection waives all grounds not specified. Berry v.State, 408 So.2d 548, 550 (Ala.Cr.App. 1981), cert. denied,408 So.2d 551 (Ala. 1982); Snider v. State, 406 So.2d 1008, 1014
(Ala. Cr. App), cert. denied, 406 So.2d 1015 (Ala. 1981). This issue is therefore not preserved for our review.
Although the appellant raises other issues, they lack merit and will not be addressed in this opinion. For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] The photographs made of the decedent were "slide" photos taken during his autopsy; prints were made from them later. Polaroid photographs were also taken during the autopsy. The slides were shown to the jury during Dr. Brissie's testimony at trial, and the photographs were viewed by the jury during its deliberation.
[2] This allegation is incorrect. Dr. Brissie's testimony indicated that the amputation occurred during emergency surgery that was performed in an attempt to save the life of the victim and not during the autopsy.