LEIGH M. CLARK, Retired Circuit Judge.
The indictment in this case charged in material and pertinent part that defendant “did, with the intent to commit the crime of Murder (Section 13A-6-2 of the Code of Alabama) attempt to commit said offense by shooting John R. Scott with a pistol, in *1074 violation of § 13A-4-2 of the Code of Alabama.’’ The verdict of the jury was, “We, the jury find the defendant guilty of attempted murder.” The court sentenced defendant (appellant) to imprisonment for thirty-five years.
Code of Ala., § 13A-4-2(a) provides: “A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.” § 13A-4-2(d) provides: “An attempt is a: (1) Class A Felony if the offense attempted is murder .... ” The punishment for a Class A Felony is imprisonment “for life or not more than 99 years or less than 10 years.” § 13A-5-6(a)(l).
According to the undisputed evidence, on the night of January 23-24, 1980, John R. Scott, the alleged victim, was shot by defendant while both were on the upper level of the split level home of defendant’s ex-wife. The couple had been divorced about fourteen months. For a considerable period after the divorce, the children of the couple, eighteen, thirteen, and eleven years of age respectively, lived with their mother. During that time, the victim, a married man, and defendant’s ex-wife engaged in a recurrent adulterous relationship at the home, of which defendant had been informed. The youngest child moved into the home of the father the first of January 1980. The thirteen-year-old child, a son, was spending the night at his father’s home on the night of the tragedy.
The undisputed evidence also shows that, on the same occasion that defendant shot John R. Scott with a pistol, defendant also shot and killed his ex-wife.
According to the testimony of defendant’s eighteen-year-old daughter, she went to bed on the lower level about 11:30 on the night of January 23-24; some time after she had gone to sleep, knowing that her mother and Scott were on the upper level, she heard some scuffling, some shots, the voice of her father yelling and cursing and the voice of her mother telling him to get out. The witness became afraid, ran out of the back door and went to the home of a nearby neighbor.
Officers were alerted to the alleged crime by telephone calls from a man who was still holding the phone while in a wounded condition, and who they learned was John R. Scott, who, according to the evidence, was sent to the hospital where it was determined that he had two gunshot wounds, one a “through and through” bullet wound of the chest and the other a bullet wound of the right arm. The physician was not positive as to whether the wounds were caused by one bullet or by two.
The testimony of John R. Scott was in part as follows:
“Q. Then [after Mrs. Spears’ daughter had gone to bed downstairs] what did you and Mrs. Spears do?
“A. We were sitting at the dining room table [on the upper level] talking, having a drink.
“Q. Had you been drinking that night? “A. Yes, I had.
“Q. Do you remember Mr. Spears coming to the house that night?
“A. Very definitely I do.

“Q. We’ll come back to the drawing in a minute. What did you see or hear about Mr. Spears arriving at the house?
“A. It was late and Dorothy alerted to a sound.
“Q. About what time was it?
“A. It was after midnight, probably closer — I do not know, probably closer to 1:00. She alerted to a sound. She dashed through the dining room to the front window, looked out, then she came back to that big window in the dining room in the rear of the house and looked out, and she said, ‘That’s Ron.’ You could hear some commotion at the back of the house.
“I looked out the rear window and saw a person who looked a great deal like Ron Spears. I followed her into the bedroom, the back bedroom, where the window was right above the patio. And there I saw Spears on the patio, he was progressing backwards and then came forward as *1075 though he were throwing himself at that lower basement door.
“At that point, I took Dorothy by the hand and attempted to run for the front door to get out of the house. And she broke my grip and, said, ‘We’ll never get out the front door. This is my house,’ words to this effect, ‘This is my house, he has no business here,’ etc., and gave me a push indicating that I should go into one of those — in that unoccupied bedroom. Do you want me to point to it?
“Q. Yes, sir, if you would.
“A. In here.
“MR. MORRIS: In where?
“A. In this bedroom, which would be the southwest bedroom of the house. Now, from there on, the action took place so very rapidly, it took place a lot more quickly than I can say it.
“There was Dorothy’s voice saying, and I presume Ron’s voice, there were his words like he was saying something to the effect that, ‘You’re no damn good bi — ,’ whatever, and she was saying, ‘Get out of this house, and so forth, and then there was a gunshot. There was a loud, loud explosion followed by a quick scuffling sound and a second loud explosion. “At that point, I opened that door where I was, so I came out of here. Dorothy’s head was lying in that doorway right there, and I reached down to her like that when Ron Spears sprang out of this bedroom door opening, and if I may act it out, like this, with a pistol in his hand, and he fired. I was hit once with a bullet, I went back through that doorway. I tried to get that door closed and the gun fired again.
“That gun was a semi-automatic big frame pistol. And when that second shot fired either I opened the door or the blast pushed the door open, and Ron departed from this hall and out here, or at least he turned as though he were going toward the front door. At that point, I was still on my feet. I walked from here to this window. Ron had parked his car out here on this side. He got in the vehicle, he had backed up into the street, and I could see the silhouette of an Olds Cutlass. I was shopping for one at the time. And then it departed in a westerly direction. “I walked from there back down to this hall. I just looked at Dorothy and knew that she needed help more than I did, then I walked right to that telephone and I called Huntsville City Police, and I told them—

No witnesses testified on call of the defendant.
We see no reasonable basis for a contention that the evidence was not sufficient to support the verdict.
Among several photographs that “accurately” depicted and portrayed the scene of the alleged crimes at the time they occurred was State’s Exhibit No. 3-F, which had in it a picture of the body of Dorothy Spears. As to the objection and the ruling thereon, the transcript shows:
“MR. MORRIS: Yes, sir, A, B, C, D, E, and F and we object to 3-F on the grounds that it has no relevance.
“MR. SIMPSON: Your Honor, the State is going to have testimony from Mr. Scott that that’s what he saw from the door here that he was shot, and that’s what he saw.
“THE COURT: Overruled.
“MR. MORRIS: Further grounds, for the record, Your Honor, we state it’s introduced to inflame the minds of the jury, has no relevancy whatsoever to this case, that the photograph itself shows no relevant evidence such as bullet holes or any damage to any physical properties whatsoever other than to depict the body of Dorothy Spears who is not an issue in this case.
“THE COURT: 3-A through F is admitted.”
The evidence as to the action, the shooting, the fall, the death and the lying on the door of Mrs. Spears, flowed freely from the mouths of witnesses, on direct examination and on cross-examination, without objection from either the State or the defense. The locations of the rooms, *1076 the halls and the three individuals involved were the subjects of intense interrogation. There was evidence as to the location of the body of Mrs. Spears. Photographic evidence thereof had the same reasonable tendency to prove or disprove some material fact in issue as did the oral testimony thereof, and, therefore, was not subject to the objection based on claimed irrelevancy. Farris v. State, 57 Ala.App. 390, 328 So.2d 640 (1976). Gruesomeness is claimed as an additional ground of objection, but the picture does not show gruesomeness other than does the usual picture of any other dead person. Even if there were accentuating gruesomeness in the picture, it is nevertheless admissible if it tends “to shed light on, strengthen or illustrate the truth of other testimony.” Richardson v. State, Ala.Cr.App., 376 So.2d 205, 208, cert. denied, 376 So.2d 228 (1979); Lewis v. State, Ala.Cr.App., 339 So.2d 1035, cert. denied, 339 So.2d 1038; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62 (1974).
Appellant bases another assertion of error on the following that occurred during the State’s closing argument to the jury:
“MR. MORRIS: Your Honor, I object to that, telling about the life or death of Dorothy Spears. That’s not within the issues of this case. The issue is whether he attempted to kill Mr. Scott on that occasion.
“THE COURT: Overruled.”
Appellant argues, “The Statement made by the prosecutor in his summation had the effect of raising in the jury’s mind, considerations, which it is not assigned to make, namely, whether or not appellant had ‘murdered’ Dorothy Spears prior to shooting John Scott.” The transcript does not show the argument of State’s counsel to which the objection was made, which prevents a conclusive determination of the propriety of the actual language of the argument. Nevertheless, the objection itself assumes that it would have been improper for State’s counsel “talking about the life or death of Dorothy Spears,” which is an unwarranted assumption. As previously indicated, the life and death of Dorothy Spears became a subject of much of the testimony, without any objection on the part of defendant, much of which having been brought on cross-examination of witnesses for the State. For example, the following is found in the cross-examination of John R. Scott:
“Q. And you say you stepped out of this bedroom?
“A. That is correct, sir.
“Q. And you saw Dorothy in this bedroom?
“A. I said I saw Dorothy’s head right there at that doorway just as you would enter that bedroom. I’ll place her for you.
“Q. Now you opened the door?
“A. Yes, sir, I did.
“Q. And you said Ron Spears stepped out of where?
“A. I opened this door, Dorothy’s head was right there in that doorway, and I bent down to her and Ron Spears alighted, sprung out of that doorway.
“Q. How far would that have put Ron Spears from you at the time you said that he shot you?
“A. At the time Ron Spears shot me, I have not measured that, but it was at very close range, something like from here to there.”
Our review of the transcript convinces us that both parties realized that the death of Mrs. Spears and the injury to Mr. Scott were so closely related in point of time, place and persons that neither party would endeavor to close the door to evidence that may have primarily related to the death of Mrs. Spears. Each party had a right to comment on such evidence. Whatever is in evidence is considered subject to legitimate comment by counsel. Roberts v. State, Ala.Cr.App., 346 So.2d 473, cert. denied, Ex parte State, ex rel. Atty. Gen., 346 So.2d 478 (1977); Kirkland v. State, Ala.Cr.App., 340 So.2d 1139, cert. denied, Ex Parte Kirkland, 340 So.2d 1140 (1976); Henley v. State, 361 So.2d 1148, writ denied, Ex parte Henley, 361 So.2d 1152 (1978). The court was not in error in overruling defendant’s objection to the argument.
*1077 Appellant’s only other contention for a reversal is as to the failure or refusal of the court to instruct the jury in its oral charge as to the provisions of Code of Ala. 1975, § 13A-4-2(c), which provides:
“A person is not liable under this Section [§ 13A — 4-2, under which defendant was indicted and tried] if, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, he avoided the commission of the offense attempted by abandoning his criminal effort and, if mere abandonment is insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof. The burden of injecting this issue is on the defendant, but this does not shift the burden of proof.”
Appellant argues that he raised the point in the trial court by the following that is found at the conclusion of the court’s oral charge to the jury:
“MR. MORRIS: We object to the Court’s failure to give the charge that I thought yesterday afternoon I was advised you would charge. We object to his failure to give 13A-4-2(c) and that’s what we relied on as a defense and it would show that the pistol would have had more bullets in it, that through Mr. Scott that he walked away without taking his life. The defendant has injected that issue in the case and the Court’s refusal to give that charge hopefully is error.
“THE COURT: Ladies and Gentlemen of the jury, you may retire and consider your verdict.

The novelty of the question now presented for review indicates on its face that it deserves more discussion than we are disposed to give it. This, for the reason that the action taken in the trial court did not preserve the question for review on appeal. It has been repeatedly held in Alabama that any question of the court’s error in its refusal or failure to charge on a particular subject applicable under the evidence is not subject to review on appeal unless the appellant raised the question in the trial court by a requested written charge, and an oral request is not sufficient. Smith v. State, 53 Ala.App. 657, 303 So.2d 157, 159 (1974); Wells v. State, Ala.Cr.App., 378 So.2d 747, cert. denied, Ex parte Wells, 378 So.2d 756 (1979); Hall v. State, Ala.Cr.App., 375 So.2d 536 (1979).
The irreviewability of the action of the trial court makes it unnecessary for that which would otherwise be an extended discussion of the perplexing question whether the evidence as a whole would permit an inference of “a voluntary and complete renunciation” of any “criminal intent” to commit murder. It would also involve the troublesome question whether there could be a renunciation as defined by sub-division (c) of § 13A-4-2 by conduct subsequent to an assault that had consisted of such an overt act as that of intentionally shooting a pistol at a vital area of a person at close range. Such questions should be left to cases in which they are definitely presented.
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.